**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **JOSHUA HOSKINS, #R54570,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | )   **Case No. 16-cv-00334-MJR** |
| | ) |
| **DILDAY, SHOENBECK,** | ) |
| **HUDSON, MAYERS, EVOLADI,** | ) |
| **GUTREUTER, ALLEN, ENGELAGE,** | ) |
| **HARVEY, LALIS, SPILLER,** | ) |
| **LANG, FREIDRICH, C. BUMP,** | ) |
| **WARD, WOOLEY, GEE, MAPLE,** | ) |
| **JOHN DOE 1, and JOHN DOE 2,** | ) |
| | ) |
| **Defendants.** | ) |

## <u>MEMORANDUM AND ORDER</u>

**REAGAN, Chief District Judge:**

Plaintiff Joshua Hoskins, an inmate who is currently incarcerated at Menard Correctional Center ("Menard"), brings this *pro se* action for alleged violations of his constitutional rights under 42 U.S.C. § 1983. Plaintiff's claims stem from a common thread of First Amendment retaliation and Eighth Amendment violations of his bodily integrity in various forms. Plaintiff's trouble at Menard began on February 13, 2016, when he alleges that guards first allowed him to be attacked by a fellow inmate, and then the guards proceeded to attack him themselves.[1] Following the attack, Plaintiff alleges that he was denied medical care, that he was unable to lodge grievances, that prison officials ignored his requests to protect him from staff and inmates, and that he continues to be harassed and in danger. The following defendants have been named

---

[1] The Court acknowledges that this complaint contains numerous claims against numerous defendants. However, the Court is not exercising its authority to sever the complaint at this juncture because it appears that all of the claims stem from a physical attack on a single date in February 2016. As the case proceeds and the claims are further developed, the Court reserves the right to apply principles of severance as it sees fit. The Plaintiff is hereby given notice of the risk of adding additional claims or parties, which may lead to severance, dismissal, or additional fees. *See George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007).

in connection with these claims: Dilday (sergeant), Shoenbeck (lieutenant), Hudson (sergeant), Mayers (lieutenant), Evoladi (lieutenant), Bruce Gutreuter (lieutenant), Allen (major), R. Engelage (medical technician), Harvey (correctional officer), Lalis (correctional officer), William Spiller (internal affairs sergeant), Aimee Lang (medical technician), Chad Freidrich (medical technician), C. Bump (internal affairs officer), Ward (internal affairs/intelligence unit), Wooley (internal affairs/intelligence unit), Gee (internal affairs/intelligence unit), Maple (correctional officer), John Doe 1 (correctional officer), and John Doe 2 (correctional officer).

This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to promptly screen prisoner complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). The Court is required to dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

The Court previously allowed leave for the Plaintiff to file an Amended Complaint by July 27, 2016. The Plaintiff filed two amended complaints. For purposes of this Order, the Court adopted the Plaintiff's Second Amended Complaint as the operative pleading, filed July 6, 2016. The Clerk of the Court is **HEREBY DIRECTED** to docket the Second Amended Complaint as the operative pleading.

## **The Complaint**

According to the Complaint, Plaintiff was exiting the west cell house at Menard on February 13, 2016, when an unnamed inmate called out to him from a cell, threatening to attack him for being a snitch. Plaintiff asked the guard on duty, Officer Dilday, if he could return to his cell or have some other form of protection. Dilday retorted that he could not, and that he would

have to endure the attack because Dilday believed that Plaintiff had been sent to Menard for assaulting a correctional officer. Dilday also commented that he was unhappy with Plaintiff for filing grievances against Menard staff, and that he would like to beat Plaintiff himself.

Outside the west cell house, Plaintiff encountered Lieutenant Shoenbeck and explained his safety concerns regarding the inmate and Dilday. Lieutenant Shoenbeck dismissed his concerns, indicated that like Dilday and other Menard staff he was displeased with the Plaintiff's use of the grievance system, and stated that Plaintiff would have to endure the attack or fight back. An unknown inmate ran up to Plaintiff and struck him twice in the face with a closed fist causing extensive injuries to his nose, face, and mouth. His injuries bled and swelled. While the fight was going on, Shoenbeck stated that he could falsify disciplinary reports to make the Plaintiff look culpable or to prevent the Plaintiff from successfully triggering an investigation into the fight.

Dilday stopped the fight and handcuffed the Plaintiff. At Shoenbeck's direction, Dilday tightened the cuffs and began beating the Plaintiff, striking him with a closed fist in the face and jaw. Dilday walked away and Sergeant Hudson then commented that Plaintiff was bleeding from the mouth. Hudson also participated in the beating by slamming Plaintiff's face into the concrete ground. Lieutenant Mayers encouraged Hudson's conduct, stating that the Plaintiff deserved payback for allegedly assaulting a correctional officer at Stateville. Hudson continued the beating, striking the top of Plaintiff's head with a closed fist. Lieutenant Gutreuter then directed that the Plaintiff be taken to the healthcare unit for further beating.

Two unknown white male correctional officers approached the Plaintiff and shoved his body, choked him, twisted the handcuffs, and threatened to break his arms. Plaintiff was brought to a room in the healthcare unit where Gutreuter, Evoladi, Allen, and medical technician

Engelage were all present. Allen stated that the Plaintiff was on his radar for filing grievances against Menard staff and because he was sent to Menard for allegedly assaulting a correctional officer. Allen directed Gutreuter and Evoladi to beat Plaintiff severely. Engelage echoed Allen's sentiment, and added that she would not report anything or provide the Plaintiff any medical care because she was displeased with the grievances he had been filing complaining of medical care at Menard. Engelage allegedly intended to help falsify reports so that the Plaintiff could not grieve his beating.

Gutreuter indicated "10-4" and he and Evoladi shoved the Plaintiff into a wall, slammed his head into a door, threatened to kill him, and pepper sprayed him. Gutreuter and Evoladi dragged him from the medical unit to North 2 cell house where they rammed him into doorframes, brick walls, and metal railings. They dragged his body up and down galleries, struck his body in numerous ways to continue the beating. In a shower area they stomped on him and kicked his stomach, thighs, and testicles. Gutreuter rolled Plaintiff on his back and sprayed his testicles with pepper spray. Evoladi told other officers to see if the visiting room cages were unoccupied so that they could use one to continue the beating. Gutreuter stated that he was going to file a false disciplinary report against Plaintiff to get him placed in segregation and to cause him a grade loss. Evoladi then escorted the Plaintiff to a visitor's cage and instructed him to strip naked.

In the cage Evoladi directed the Plaintiff to face a corner and he repeatedly struck him in the back. Officers Lalis, Maple, and other unknown officers participated. Evoladi pepper sprayed Plaintiff's face again and commanded the Plaintiff to get on the floor. Officers Lalis and Harvey kicked his face, stomach, and testicles, which caused him to vomit. Evoladi told the officers not to report the use of pepper spray. He directed the officers to take the Plaintiff to a cell. Evoladi

told Plaintiff he was not worried about Plaintiff grieving the incident because he and others could monitor the Plaintiff's correspondences and destroy his grievances.

Upon arriving in a cell, the Plaintiff rinsed his face in water and used leftover milk to rinse his eyes. Officer Harvey returned and escorted the Plaintiff to see Internal Affairs Officer William Spiller. On the walk, Harvey slammed Plaintiff into a wall and stated that Gutreuter should have killed him.

Plaintiff recounted the details of his beating to Spiller. Spiller observed his injuries but declined treatment, indicating that he was aware of the situation but had told security and medical staff not to provide treatment or to document the Plaintiff's injuries. Spiller indicated that he was familiar with the grievance and investigation system, and that his directions to other staff were designed to make it impossible for the Plaintiff to document his beating or seek relief for it. Spiller told the Plaintiff that his institutional mail and internal correspondence would be monitored to prevent him from lodging grievances, and, that if he lodged a grievance he would be framed with false criminal or disciplinary charges for possessing a weapon or prohibited substance. Further, Spiller told the Plaintiff that if he attempted to file grievances Evoladi, Gutreuter, Dilday, and other staff would physically assault him again. Spiller indicated that all medical staff and security officers were on board with the plan to keep Plaintiff from lodging any complaints or documenting his injuries.

On February 16, 2016, Plaintiff notified medical technician Chad Freidrich of his injuries as Freidrich passed his cell. Freidrich indicated that he knew who Plaintiff was, and that C. Bump, Spiller, Lang, and Stephanie[2] told him not to provide the Plaintiff with medical care.

---

[2] The Plaintiff makes a single mention of an individual named "Stephanie" in the body of the Complaint, but he does not list anyone by the name of Stephanie as a party. Thus, the Court will not treat "Stephanie" as a named defendant.

Freidrich warned Plaintiff not to waste his time sending medical requests to the medical unit, because they would go unanswered.

On February 17, 2016, Investigator C. Bump came to the Plaintiff's cell to ask him about gang activity at Menard. Plaintiff told Bump about his beating and requested medical care and assistance documenting his injuries for grievance purposes. Bump acknowledged that staff were in the wrong to beat or otherwise mistreat the Plaintiff, but indicated that he would not help the Plaintiff based on his reputation for previously assaulting a correctional officer. Bump also indicated that he did not like the way the Plaintiff grieved about staff's diligence on the job, and that he instructed staff to ignore Plaintiff's needs. Bump stated that he and Spiller would work together to prevent Plaintiff from successfully lodging any grievances.

On February 21, 2016, medical technician Lang walked by the Plaintiffs cell and stopped to comment about his beating. Like other staff, she expressed displeasure with Plaintiff's practice of filing grievances. She indicated that she would not provide the Plaintiff with medical care, and that she was acting in concert with defendants Bump, Spiller, and other staff, who disliked him.

Plaintiff encountered defendants Allen, Ward, and Wooley from the internal affairs and intelligence units on May 19, 2016. Ward commented on the beating the Plaintiff received in February, and indicated that he would not have success grieving the incident. Allen laughed, and Wooley said that Spiller and Bump told her about the Plaintiff's requests that they take action against the staff members who beat him. Wooley noted that a letter the Plaintiff wrote to an investigatory entity was intercepted and destroyed. On June 3, 2016, Wooley again repeated that Plaintiff would not be able to grieve his beating, and that he deserved the beating for having assaulted a correctional officer.

On June 23, 2016, Spiller and Investigator Gee stopped at the Plaintiff's cell. Gee acknowledged the Plaintiff's February beating, recounted extensive details of the physical harms Plaintiff suffered, and stated that he told medical and security staff to prevent grievances about the beating. Gee suggested that he had planned a way to defend himself against any grievances or claims by the Plaintiff that he did not discipline staff for the beating.

As a result of the attack and the lack of medical treatment the Plaintiff alleges countless injuries, including: swelling, bruises, abrasions, lacerations on his face, neck, knees, wrists, back, and rib cage. He claims that he cannot open his mouth or chew without pain or headaches. Additionally, the pepper spray applied to his body caused weeks of burning and discomfort. He struggled to urinate or use the bathroom without pain. Plaintiff suffered shaking and vomiting for weeks following the attack. To date, he continues to suffer mental and physical anxieties leading to depression, sleeplessness, lack of focus, inability to focus, meditate, or concentrate, and a general inability to participate fully in activities.

Plaintiff alleges that defendants Shoenbeck and Gutreuter filed false disciplinary reports against him, which resulted in the loss of five months of "c-grade," lost commissary privileges, and placement in segregation or confinement.

The Plaintiff is seeking $189,999 in compensatory damages, and $28,999 in punitive damages against each defendant. He is also seeking an injunction transferring him to another facility, as well as a permanent directive that he never be housed at Menard again.

## Discussion

Based on the allegations, the Court finds it convenient to divide the *pro se* Complaint into the following enumerated claims. The parties and the Court will use these designations in all

future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The

designation of these counts does not constitute an opinion regarding their merit.

**Count 1:**  First Amendment claim of retaliation for filing grievances, and for assaulting a corrections officer in the past;

**Count 2:**  Eighth Amendment failure to protect claim against Menard staff for allowing Plaintiff to get attacked by a fellow inmate on February 13, 2016;

**Count 3:**  Eighth Amendment failure to intervene claim against Menard staff that encouraged or did not stop Plaintiff's beating on February 13, 2016;

**Count 4:**  Eighth Amendment excessive force claim for beating the Plaintiff on February 13, 2016;

**Count 5:**  Eighth Amendment deliberate indifference by denial of medical care claim for denying Plaintiff medical care following his February 13, 2016 beating;

**Count 6**:  Fourteenth Amendment claim for intercepting or otherwise impeding Plaintiff's ability to lodge grievances regarding his February 13, 2016 beating and the subsequent harassment;

**Count 7**:  Conspiracy claim against all defendants for agreeing to allow the harm on February 13, 2016, and for then denying medical care or access to grievances; and,

**Count 8**:  Fourteenth Amendment Due Process violation for loss of credit and inmate privileges based upon false disciplinary reports by defendants Shoenbeck and Gutreuter.

Counts 1-5 and 7 shall receive further review against those defendants who are identified

below in connection with each claim. Count 6 shall be dismissed with prejudice for failure to

state a claim upon which relief may be granted because an inmate does not have a due process

interest in a prison grievance procedure. Count 8 shall be dismissed without prejudice for failure

to provide sufficient factual information to state a viable claim.

**Count 1**

Prison officials may not retaliate against inmates for filing grievances or otherwise complaining about their conditions of confinement.  *See, e.g.*, *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012); *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000).  Furthermore, "[a]ll that need be specified is the bare minimum facts necessary to put the defendant on notice of the claim so that he can file an answer."  *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002).  Naming the suit and the act of retaliation is all that is necessary to state a claim of improper retaliation.  *Id.*  A complaint that provides a short, clear statement of the relevant facts complies with the federal rules of civil procedure, and thus cannot be dismissed because it does not allege all facts necessary to clearly establish a valid claim.  *Id.*

The Plaintiff has provided sufficient factual allegations for his claim of retaliation to proceed against the aforementioned defendants. He stated that he filed a number of grievances at Menard and that he was told by the staff during and after his February 13th beating that he deserved the assault for filing too many grievances. Thus, he has identified grievances and an act of retaliation. *See Higgs,* 286 F.3d at 439. Count 1 will be allowed to proceed as to defendants Dilday, Shoenbeck, Hudson, Evoladi, Gutreuter, Allen, Engelage, Harvey, Spiller, Lang, Freidrich, Bump, Wooley, and Gee. Count 1 will be dismissed without prejudice against defendants Mayers, Lalis, Maple, John Doe 1, and John Doe 2 because the Plaintiff did not mention those individuals making any retaliatory remarks in connection with their conduct. *See e.g. Palmer v. Marion Cty.*, 327 F.3d 588, 594 (7th Cir. 2003) (section 1983 liability may only be based on a finding that the defendant caused the deprivation at issue either by direct participation or by demonstrable acquiescence).

**Count 2**

The Eighth Amendment to the United States Constitution protects prisoners from cruel and unusual punishment. U.S. CONST., amend. VIII; *see also Berry v. Peterman*, 604 F.3d 435, 439 (7th Cir. 2010). Prison conditions that deprive inmates of basic human needs, such as inadequate nutrition, health, or safety, may constitute cruel and unusual punishment. *See Rhodes v. Chapman*, 452 U.S. 337, 346-47 (1981); s*ee also James v. Milwaukee Cnty.*, 956 F.2d 696, 699 (7th Cir. 1992). In *Farmer v. Brennan*, 511 U.S. 825, 833 (1994), the United States Supreme Court held that "prison officials have a duty…to protect prisoners from violence at the hands of other prisoners." Not every risk of harm gives rise to a constitutional liability to protect. *Pinkston v. Madry*, 440 F.3d 879, 889 (7th Cir. 2011). Plaintiff must make a two-part showing: 1) that there was a serious risk of peril; and, (2) that the liable individual easily could have done something to avert the risk, but did not do so. *Id.*

A condition may be serious if it poses a substantial risk of serious harm. *See Sanville v. McCaughtry*, 266 F.3d 724, 733 (7th Cir. 2001). A threat to an inmate's physical safety may constitute a serious risk. *James*, 956 F.2d at 699. However, a threat such as the pure fact of being housed in a high risk wing is not a sufficient threat to constitute a failure to protect. *See Shields v. Dart,* 664 F.3d 178, 181 (7th Cir. 2011) (finding that defendants did not fail to protect an inmate by housing him in a high risk area where he failed to demonstrate a *specific* threat to his personal safety). "A condition is objectively serious if failure to treat it could result in further significant injury or unnecessary and wanton infliction of pain." *Reed v. McBride*, 178 F.3d 849, 852 (7th Cir. 1999) (citations omitted). Additionally, a risk of harm is only serious if there is a strong likelihood that, absent action, harm will occur. *Pinkston*, 440 F.3d at 889.

Subjectively, a plaintiff must prove that prison officials were aware of a specific,

impending, and substantial threat to his safety and choose to refrain from acting. *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996) (noting that a jury was entitled to rely on evidence that a captain knew of a risk to an inmate and a pending transfer request, but failed to act on the request in finding that the captain failed to protect the inmate). Additionally, a defendant's willingness to take affirmative steps to stop a dangerous situation is relevant to whether that defendant showed deliberate indifference. *See Shields*, 664 F.3d at 181 (noting that a guard was not required to personally intervene in a fight, and could take sufficient action by calling for back up).

Plaintiff alleges that Dilday and Shoenbeck failed to protect him from an attack by a fellow inmate on February 13, 2016. Specifically, Plaintiff alleges that Dilday saw and heard the unnamed inmate call out threats and that Dilday refused to allow the Plaintiff to retreat to his cell for protection. Plaintiff exited the cell house and informed Shoenbeck of the situation, but Shoenbeck also declined to help, and suggested that Plaintiff deserved a beating and that he would have to fight back. Immediately thereafter, Plaintiff was attacked by an unnamed inmate. Given the fact that defendant Dilday allegedly personally witnessed the threats, and that Shoenbeck expressed an affirmative intent to not protect the Plaintiff, Count 2 may proceed against these two defendants. Count 2 will not proceed as to any other named defendants because Plaintiff did not mention any others in connection with a failure to protect. *See Palmer*, 327 F.3d at 594. Though the Plaintiff told a number of defendants about his beating after the fact, he does not allege that after February 13th he was under a specific threat that the other defendants deliberately ignored. Accordingly, defendants Hudson, Mayers, Evoladi, Gutreuter, Allen, Engelage, Harvey, Lalis, Spiller, Lang, Freidrich, Bump, Ward, Wooley, Gee, Maple, John Doe 1, and John Doe 2 will be dismissed without prejudice from Count 2.

**Count 3**

Under the Eighth Amendment, a police officer may be held liable for failing to intervene if he or she has a realistic opportunity to step forward and protect a plaintiff from another inmate or officer's excessive force, but fails to do so. *Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005). However, there is not a proper basis for a failure to intervene if there is not an underlying constitutional violation. *Id.*

Here, the Court cannot dispose of this claim at this juncture because there are allegations that defendants encouraged the attack on the Plaintiff by a fellow inmate and then by correctional staff, and both attacks have potential underlying constitutional violations of retaliation and excessive force. Thus, Count 3 will be allowed to proceed against the defendants who allegedly witnessed or participated in the physical abuse against the Plaintiff. These defendants are: Dilday, Shoenbeck, Hudson, Mayers, Evoladi, Gutreuter, Allen, Engelage, Harvey, Lalis, Maple, John Doe 1, and John Doe 2. Defendants Spiller, Lang, Freidrich, Bump, Ward, Wooley, and Gee will be dismissed without prejudice because the Plaintiff did not articulate facts that indicate these individuals had a realistic opportunity to stop the February 13th attack. *See Harper*, 400 F.3d at 1064.

**Count 4**

The intentional use of excessive force by prison guards against an inmate without penological justification constitutes cruel and unusual punishment in violation of the Eighth Amendment and is actionable under § 1983. *See Wilkins v. Gaddy*, 559 U.S. 34, 38-40 (2010); *DeWalt,* 224 F.3d at 619. An inmate must show that an assault occurred, and that "it was carried out 'maliciously and sadistically' rather than as part of 'a good-faith effort to maintain or restore discipline.'" *Wilkins*, 559 U.S. at 40 (citing *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)).  An

inmate seeking damages for the use of excessive force need not establish serious bodily injury to make a claim, but not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Id.* at 37-38 (the question is whether force was *de minimis*, not whether the injury suffered was *de minimis*); *see also Outlaw v. Newkirk*, 259 F.3d 833, 837-38 (7th Cir. 2001).

Plaintiff has stated a claim for excessive force based upon the beating that allegedly occurred on February 13, 2016. His complaint alleges that defendants Dilday, Hudson, Gutreuter, Evoladi, Lalis, Maple, Harvey, John Doe 1, and John Doe 2 all directly participated in the physical assault by striking him, kicking him, pepper spraying him, dragging his body about the prison, and slamming him into walls, the floor, doorframes, and metal objects, among other things. Though the initial act of abruptly handcuffing him may have been taken to restrain him from fighting another inmate, all subsequent physical acts may have gone above and beyond what was necessary to legitimately restrain him. *See Wilkins,* 559 U.S. at 40. Count 4 will be allowed to proceed against defendants Dilday, Hudson, Gutreuter, Evoladi, Lalis, Maple, Harvey, John Doe 1, and John Doe 2. Count 4 will be dismissed without prejudice as to all other named defendants because they are not personally mentioned in connection with direct physical abuse. *See Palmer*, 327 F.3d at 594.

### Count 5

Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when their conduct demonstrates deliberate indifference to the serious medical needs of an inmate. *See Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997). To establish deliberate indifference to a medical condition, a prisoner must show a condition that is sufficiently serious (objective component) and that an official acted with a sufficiently culpable state of mind in failing to address the condition (subjective component). *Id.* Whether an injury is

serious enough is a very fact specific inquiry—seriousness may be shown if an ordinary doctor opined an injury warranted treatment, if an injury significantly impacted an individual's daily activities, or if an injury caused chronic or substantial pain, among other things. *Id.*

As to the subjective component, an official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Jackson v. Ill. Medi-Car, Inc.*, 300 F.3d 760, 765 (7th Cir. 2002). If an official reasonably responds to a risk, even if harm was not averted, deliberate indifference does not exist. *Id.* A claim for medical negligence does not amount to deliberate indifference. *Gutierrez*, 111 F.3d at 1369. Additionally, a reasonable response differs depending on the capacity of the alleged wrongdoer. A non-medical prison employee—one who for example handles grievances, or supervises prison operations—will generally not be liable for deliberate indifference if he or she believes the prisoner is receiving adequate medical care, or takes steps to verify that the inmate is receiving care. *See Greeno v. Daley*, 414 F.3d 645, 655-57 (7th Cir. 2005).

Objectively, the Plaintiff has identified injuries serious enough to warrant medical care. He alleged jaw pain, bruising, swelling, bleeding, vomiting, and headaches, to name a few symptoms. Given the alleged severity of the beating he incurred, the physically injuries arguably would be quite extensive and would warrant medical care.

Next, as to the subjective component, the Plaintiff has alleged that numerous defendants explicitly acknowledged his injuries and need for treatment, and intentionally declined him care. As to the following defendants, he alleged that they blatantly told him he would not receive medical care: Engelage, Allen, Spiller, Freidrich, Bump, Lang, and Gee. Count 5 will be allowed to proceed against those defendants. The distinction between the medical defendants (Engelage, Lang, and Freidrich) and the non-medical defendants (Allen, Spiller, Bump, and Gee) does not

matter in the context of this claim because, based on the Plaintiff's factual allegations, the non-medical defendants clearly did not believe the Plaintiff was receiving adequate medical care when declining to address his requests for care. *See Greeno*, 414 F.3d at 655-57.

Count 5 will not proceed against any other named defendants because the Plaintiff did not specifically allege that any other named defendants deliberately denied him medical care. *See Palmer*, 327 F.3d at 594. It should be noted, other defendants allegedly refused to document his physical condition to prevent him from filing a grievance, but that is different from expressly denying care.

## Count 6

The Complaint makes many references to the Plaintiff's inability to access the grievance procedure and to the Menard officials' complete ignorance to or failure to respond to said grievances. To the extent that Count 6 arises from defendants' failure to respond to Plaintiff's grievances, it is subject to dismissal. Prison grievance procedures are not constitutionally mandated and thus do not implicate the Due Process Clause *per se*. *See e.g. Grieverson v. Anderson*, 538 F.3d 763, 772 (7th Cir. 2008) (noting that any right to a grievance procedure is a procedural right and thus is not the proper fruit of a substantive due process claim). As such, the alleged mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). Put differently, the fact that defendants may have prevented the Plaintiff from filing grievances or may have ignored Plaintiff's grievances does not give rise to a due process claim against them. And, in any event, to the extent Plaintiff is complaining that officials denied him medical treatment by ignoring his grievances, he may continue to pursue this theory under **Count 5**. Accordingly, **Count 6** fails and shall be dismissed with prejudice.

**Count 7**

Civil conspiracy claims are cognizable under § 1983.  *See Walker v. Thompson*, 288 F.3d 1005, 1007-08 (7th Cir. 2002) (recognizing a conspiracy claim under section 1983). "[I]t is enough in pleading a conspiracy merely to indicate the parties, general purpose, and approximate date . . . ." *Id.* at 1007. Here, there is an overarching theme of conspiracy unifying Plaintiff's factual allegations. He alleges that nearly all of the defendants who beat him, denied him medical care, and impeded his ability to lodge grievances, were acting in concert to punish him for filing grievances and for having a history of assaulting a correctional officer. The punishment for filing grievances aspect of his complaint may fall primarily within the purview of a First Amendment retaliation claim. However, as to the punishment for assaulting a correctional officer, conspiracy may be the primary theory Plaintiff pursues. Given the factual allegations that defendants Dilday, Mayers, Allen, Engelage, Gutreuter, Spiller, Bump, and Wooley explicitly mentioned the Plaintiff's history as a correctional officer assaulter in relation to their efforts to deny the Plaintiff care or grievances, the Plaintiff has stated enough information to support a potential conspiracy claim against these defendants. Plaintiff has identified the parties, stated the basic purpose—to punish him for assaulting a correctional officer, and has alleged a timeframe for the conspiracy that began in February 2016 and has continued to present. Thus, he has stated enough to proceed beyond threshold review on his conspiracy claim.

Count 7 will be allowed to proceed against defendants Dilday, Mayers, Allen, Engelage, Gutreuter, Spiller, Bump, and Wooley. Count 7 will be dismissed without prejudice as to defendants Shoenbeck, Hudson, Evoladi, Harvey, Lalis, Freidrich, Ward, Gee, Maple, John Doe 1, and John Doe 2 because the Plaintiff did not explicitly mention any of these defendants in connection with his status as someone who previously assaulted a correctional officer.

**Count 8**

In *Hanrahan v. Lane*, 747 F.2d 1137, 1140-41 (7th Cir. 1984), the Seventh Circuit held that the filing of false disciplinary charges by a correctional officer does not state a Fourteenth Amendment claim when the accused inmate is given a subsequent hearing on those charges in which the inmate is afforded the procedural protections outlined in *Wolff v. McDonnell*, 418 U.S. 539, 556-58 (1974) (advance written notice of the charge, right to appear before the hearing panel, the right to call witnesses if prison security allows, and a written statement of the reasons for the discipline imposed).  The Seventh Circuit reasoned that prisoners have a right "to be free from arbitrary actions of prison officials," *Hanrahan*, 747 F.2d at 1140, but determined that the procedural protections outlined in *Wolff* provided the appropriate protection against arbitrary actions taken by a correctional officer such as issuing the inmate a fabricated conduct violation.

In the instant complaint, Plaintiff states that he was falsely accused of unspecified conduct by Defendants Shoenbeck and Gutreuter, who apparently filed false reports against him on February 13, 2016.  However, Plaintiff gives no further information about the nature of the false charge, nor does he state whether he was given a hearing on the charge that afforded him the procedural protections described in *Wolff*.  If Plaintiff was given a proper hearing, yet was found guilty of the false charge, he would not have a constitutional claim so long as the decision of the disciplinary hearing board was supported by "some evidence." *Black v. Lane*, 22 F.3d 1395, 1402 (7th Cir. 1994).  Even a meager amount of supporting evidence is sufficient to satisfy this inquiry.  *Scruggs v. Jordan*, 485 F.3d 934, 941 (7th Cir. 2007).  On the other hand, if Plaintiff was not afforded the procedural protections in *Wolff*, he still may not have an actionable claim.

Plaintiff did state that he lost five months of "c-grade" loss, lost commissary privileges, and was placed in segregation or confinement as a result of the false tickets, but he gives no information on if he received *Wolff* procedural due process leading to these deprivations. In the absence of such evidence, Count 8 is dismissed without prejudice against all defendants for failure to provide sufficient factual support to state a claim.

### **Pending Motions**

Plaintiff has the following pending motions: Motion for Preliminary Injunction (Doc. 14); Motion for Leave to File an Amended Complaint (Doc. 15); Motion for Status on the Merit Review and Status on the Second Amended Complaint (Doc. 16); Motion for Urgent Ruling on Preliminary Injunction (Doc. 17); Motion for an Emergency Preliminary Injunction (Doc. 18); Motion for Status Regarding the Second Amended Complaint (Doc. 20); and Motion for a Preliminary Injunction and for the Court to Consolidate and Consider all the Pending and Filed Motions (Doc. 21) .

The Motion for Leave to File an Amended Complaint (Doc. 15) is unnecessary and moot as the Court had already granted leave prior to the filing of that motion, and the Court has now reviewed the latest version of an amended complaint submitted by the Plaintiff—the Second Amended Complaint, submitted July 6, 2016.

As for the motions for status on the merits review (Docs. 16 and 20), these motions are rendered moot, because this Order constitutes the merits review.

Finally, as to the requests for Preliminary Injunction (Docs. 14, 17, 18, and 21), the undersigned is referring these motions to Magistrate Judge Williams for handling with the rest of the case. The Court notes that in the July 5, 2016 Motion for Preliminary Injunction (Doc. 14)

the Plaintiff explicitly stated that he only wanted a preliminary injunction, and that he did not want a temporary restraining order.

### Identification of Unknown Defendants

Plaintiff shall be allowed to proceed with Counts 3 and 4 against John Doe 1 and John Doe 2, whose names are currently unknown. However, these parties must be identified with particularity before service of the Complaint can be made on them. Where a prisoner's complaint states specific allegations describing conduct of individual prison staff members sufficient to raise a constitutional claim, but the names of those defendants are not known, the prisoner should have the opportunity to engage in limited discovery to ascertain the identity of those defendants. *Rodriguez v. Plymouth Ambulance Service*, 577 F.3d 816, 832 (7th Cir. 2009). In this case, several co-workers of the unknown defendants are already named in this action, and they shall promptly respond to discovery, informal or otherwise, aimed at identifying these unknown defendants by name. Guidelines for discovery will be set by the United States Magistrate Judge. Once the names of John Doe 1 and John Doe 2 are discovered, Plaintiff shall file a motion to substitute the newly identified defendants in place of the generic designation in the case caption and throughout the Complaint.

### Disposition

**IT IS ORDERED** that **COUNT 6** is **DISMISSED** with prejudice against all defendants for failure to state a claim upon which relief may be granted. **COUNT 8** is **DISMISSED** without prejudice as to all named defendants because the Plaintiff failed to state sufficient facts to properly state a claim.

**COUNT 1** will proceed against defendants **DILDAY, SHOENBECK, HUDSON, EVOLADI, GUTREUTER, ALLEN, ENGELAGE, HARVEY, SPILLER, LANG,**

FREIDRICH, BUMP, WOOLEY, and GEE. COUNT 2 will proceed against defendants DILDAY AND SHOENBECK. COUNT 3 will proceed against defendants DILDAY, SHOENBECK, HUDSON, MAYERS, EVOLADI, GUTREUTER, ALLEN, ENGELAGE, HARVEY, LALIS, MAPLE, JOHN DOE 1, and JOHN DOE 2. COUNT 4 will proceed against defendants DILDAY, HUDSON, GUTREUTER, EVOLADI, LALIS, MAPLE, HARVEY, JOHN DOE 1, and JOHN DOE 2. COUNT 5 will proceed against defendants ALLEN, ENGELAGE, SPILLER, LANG, FREIDRICH, BUMP, and GEE. COUNT 7 will proceed against defendants DILDAY, MAYBERS, ALLEN, ENGELAGE, GUTREUTER, SPILLER, BUMP, and WOOLEY.

With respect to COUNTS 1-5 and 7, the Clerk of Court shall prepare for ALL NAMED DEFENDANTS: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is DIRECTED to mail these forms, a copy of the Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file

or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Stephen C. Williams** for further pre-trial proceedings, including a decision on Plaintiff's Motion for Recruitment of Counsel (Doc. 3). Further, this entire matter shall be **REFERRED** to United States Magistrate Judge **Williams** for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, regardless of the fact that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff.

Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: July 28, 2016**

<u>**s/ MICHAEL J. REAGAN**</u>
**U.S. District Chief Judge**