IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JOSHUA HOSKINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 16-CR-334-MJR-SCW |
| | ) | |
| JUSTIN DILDAY, JOSHUA | ) | |
| SHOENBECK, CORY BUMP, AIMEE | ) | |
| LANG, REVA ENGLEAGE, CHAD | ) | |
| FRIEDRICH, MAYNARD HUDSON, | ) | |
| BRUCE GRUTREUTER, CLINT | ) | |
| MAYER, FRANK EOVALDI, DAMON | ) | |
| MAPLE, ZACHARY HARVEY, CALEN | ) | |
| LALIS, WILLIAM SPILLER, | ) | |
| RAYMOND ALLEN, SARAH WOOLEY, | ) | |
| SHAUN GEE, JOHN DOE #1, JOHN | ) | |
| DOE #2, and JOHN R. BALDWIN | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

REAGAN, Chief Judge:

The Court is cognizant of its duty to avoid entanglement in the day-to-day affairs of prison administrators, as modern prison administration is an "inordinately difficult undertaking." *Thornburgh v. Abbott*, **490 U.S. 401, 407 (1989)(citation omitted)**. Nevertheless, federal courts are under a duty to ensure that the constitutional rights of prisoners are not violated. *Brown v. Plata*, **563 U.S. 493, 511 (2011)**. Plaintiff Joshua Hoskins, an inmate incarcerated at Menard Correctional Center, alleges that he was attacked by another inmate on February 13, 2016, and that Defendants allowed the attack to happen before joining in and embarking on a course of serious misconduct in the months that followed.

1

Hoskins filed multiple complaints in this case before the Court conducted a preliminary review pursuant to 28 U.S.C. § 1915A. In the Court's threshold order (Doc. 22), the Court adopted Plaintiff's second amended complaint (Doc. 23) as the operative pleading, narrowing the scope of the complaint to include Plaintiff's allegations of being attacked in February 2016 and the aftermath. Hoskins has also filed a series of motions for preliminary injunction (Docs. 14, 18, 21, 29, 35) seeking a transfer from Menard Correctional Center. Granting preliminary injunctive relief to a prisoner seeking a transfer is extremely rare, but in certain circumstances it is warranted. The instant case is the second time in sixteen years on the federal bench that the undersigned has ordered a transfer.

## BACKGROUND

On February 13, 2016, Hoskins was exiting the West Cell House at Menard when an unnamed inmate called out to him and threatened to attack him for being a snitch. According to Hoskins, several of the defendants were present before, during, and after the attack. Hoskins asked Defendant Dilday, the officer on duty, if he could return to his cell because he was threatened by the inmate or if he could have some form of protection. Dilday refused and told Hoskins that he would have to endure the attack because Dilday believed Hoskins was sent to Menard for assaulting a corrections officer at another institution. Dilday expressed to Hoskins that he was not happy about Hoskins filing grievances against Menard staff and that Dilday would like to hit Hoskins himself.

According to Hoskins, he then ran into Defendant Shoenbeck outside the west

cell house and told Shoenbeck about his concerns for his immediate safety. Shoenbeck dismissed his concerns and voiced complaints similar to Dilday's. Hoskins claims that Shoenbeck told him he would either have to endure the attack from the inmate or fight back. At that point, an inmate ran up to Hoskins and punched him twice in the face, causing injuries to his nose, face, and mouth. Shoenbeck then threatened to falsify disciplinary reports to make Hoskins look culpable for the fight. Hoskins alleges that Dilday then stepped in to stop the fight, handcuffed him, and then beat him at Shoenbeck's direction. Dilday walked away, and Defendant Hudson began beating Hoskins while Defendant Mayer encouraged Hudson, saying that Hoskins deserved payback for assaulting a correctional officer at Stateville.

Defendant Grutreuter was present and directed that Hoskins be taken to the healthcare unit for further beating. Two unknown correctional officers shoved and choked Hoskins, twisting his handcuffs and threatening to break his arms. Hoskins was taken to a room in the healthcare unit with Defendants Grutreuter, Eovaldi, Allen, and Engelage. Defendant Allen told Hoskins that he was on Allen's radar for filing grievances and for allegedly assaulting an officer at Stateville. Allen then directed Grutreuter and Eovaldi to attack Hoskins. Engelage echoed Allen's sentiment and said she would not report the other defendants or provide Hoskins with medical care for his injuries. Defendants Grutreuter and Eovaldi severely beat Hoskins and dragged him from the healthcare unit to the North 2 Cell House, where they continued beating him and sprayed him with pepper spray. Defendants Lalis and Maple, along with other unknown officers, eventually joined in the attack.

3

When the attack stopped, Hoskins was taken to a cell where Eovaldi told him that his correspondence would be monitored for grievances and destroyed if he tried to file any. Hoskins later recounted the details of his beating to Defendant Spiller, who allegedly told Hoskins that he was aware of it and that he directed security and medical staff not to provide care to Hoskins after the attack. Spiller also told Hoskins that he had directed the staff to make it impossible for Hoskins to document or grieve his beating. He threatened to have Defendants Eovaldi, Gutreuter, and Dilday, along with other staff, attack Hoskins again if he attempted to file any grievances.

On February 16, 2016, Hoskins attempted to get medical attention from Defendant Freidrich, but Friedrich told him that he had been instructed not to treat Hoskins. On February 17, Hoskins attempted to tell Defendant Bump about his beating and need for medical care while Bump was asking Hoskins about gang activity at Menard. Bump allegedly acknowledged that it was wrong for staff to beat Plaintiff but refused to help him get medical treatment. He also advised Hoskins that he would help Spiller prevent Hoskins from filing grievances. On February 21, Defendant Lang, a medical technician, walked by Plaintiff's cell and expressed similar displeasure with Plaintiff's use of grievances, refusing him medical treatment.

On May 19, 2016, Hoskins had a run-in with Defendants Allen, Ward, and Wooley from the internal affairs and investigations unit. Ward told Hoskins that he would not succeed in trying to grieve his February beating, and Allen laughed. Wooley told Hoskins that Defendants Spiller and Bump told her about Plaintiff's requests for actions against the officers who attacked him and that a letter he wrote to an

investigatory entity was intercepted and destroyed. During a June 3, 2016, conversation, Wooley again told Plaintiff that he would not succeed in filing a grievance and that his beating was deserved. Defendant Gee also told Hoskins in a June 2013 conversation that Gee was preventing him from filing grievances about the February attack.

Hoskins filed a number of motions seeking a preliminary injunction ordering that he be transferred out of Menard. Magistrate Judge Williams held a hearing on the motions on September 26, 2016. At the hearing, Hoskins presented testimony describing the allegations in his motions for a preliminary injunction and the ongoing issues he faces in routinely encountering the defendants while incarcerated at Menard. Hoskins testified that Defendant Spiller prevented him from sending mail and from receiving healthcare treatment even during a writ to a facility in Chicago. According to Hoskins, when he returned from Chicago, Defendant Grutreuter told another officer that Hoskins was not allowed a meal tray even though he had missed meals due to his travel.

Hoskins recalled another time when Defendant Eovaldi pressured him to tell a worker in the healthcare unit that he had no mental health issues and to decline treatment. Hoskins testified that Eovaldi watched the entire encounter to ensure that he declined treatment. Hoskins said that he suffers from bi-polar disorder, schizophrenia, and depression and that Defendant Engelage refuses to give him his medication, so he can only receive his needed medication when she is not there. According to Hoskins, this began after Defendant Eovaldi assaulted him. Engelage works five days per week, and Hoskins cannot receive medication on those days.

5

Hoskins also testified that Defendant Spiller prevents him from being allowed to shower and that he had not showered since before the February 13, 2016, assault. In order to bathe, Hoskins must use the sink in his cell. Hoskins said that because he is indigent, he is supposed to be provided with hygiene necessities, like soap and toothpaste, but he is not. Hoskins testified that he bathes at the sink in his cell with soap that his cellmate gives him. According to Hoskins, he is on restriction, which makes it difficult to purchase sufficient hygiene items from the commissary. Hoskins testified that his cellmate shares food with him because he is not given meal trays if Defendants Spiller or Hudson are watching.

Hoskins further testified that he was physically attacked again in June 2016 and that there have been times when guards spit on him, though he said that had not happened since July 2016. Hoskins indicated that he is routinely threatened with physical harm by guards and prevented from going outside to the yard. Hoskins is not allowed to file grievances. Defendant Spiller has threatened to destroy all of his grievances. According to Hoskins's testimony, he sent one grievance directly to the Administrative Review Board but had not attempted to file any further grievances after Spiller's threat.

Plaintiff's testimony was unrebutted at the hearing. Counsel for the defendants presented no testimony or evidence, instead requesting leave to supplement their response to Plaintiff's motions with documents. Judge Williams granted counsel five days to file a motion justifying why Defendants should be allowed to supplement the record after appearing at the hearing without evidence to present. Defendants filed a

motion for leave to file supplemental record on October 3, 2016. Judge Williams, in a memorandum and order denying the motion (Doc. 59), noted that the motion was only three paragraphs long and included no proposed affidavits or indication as to the affidavits would show. Defense counsel offered no argument in favor of allowing the defendants to submit further evidence. Meanwhile, Plaintiff filed several supplemental documents after the hearing alleging that he had additional confrontations with Defendants Spiller and Engelage and that various people warned him of threats made against Plaintiff by Defendants.

Judge Williams submitted a report and recommendation ("R&R") recommending that the Court grant Plaintiff's motions for a preliminary injunction (Doc. 81). Plaintiff filed objections (Doc. 86), and Defendants filed a response in which they raise a number of issues (Doc. 87). Timely objections having been filed, the Court undertakes *de novo* review of the portions of the report to which the parties specifically objected. 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b), SDIL-LR 73.1(b). The undersigned can accept, reject, or modify Judge Williams' recommendations, receive further evidence, or recommit the matter with instructions.

<u>LEGAL STANDARDS</u>

*1. Preliminary Injunction Standard*

A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." ***Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)(emphasis in original). *Accord Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) ("A preliminary**

injunction is an extraordinary remedy never awarded as of right")(citation omitted). To secure a preliminary injunction, the movant must show (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm without the injunction, (3) that the harm he would suffer is greater than the harm a preliminary injunction would inflict on defendants, and (4) that the injunction is in the public interest. *Judge v. Quinn*, **612 F.3d 537, 546 (7th Cir. 2010)(citing** *Winter*, **555 U.S. at 20).** The "considerations are interdependent: the greater the likelihood of success on the merits, the less net harm the injunction must prevent in order for preliminary relief to be warranted." *Judge*, **612 F.3d at 546. (citation omitted)**

In the context of prisoner litigation, there are further restrictions on courts' remedial power.  The scope of the court's authority to enter an injunction in the corrections context is circumscribed by the Prison Litigation Reform Act (PLRA). *Westefer v. Neal*, **682 F.3d 679, 683 (7th Cir. 2012).**  Under the PLRA, preliminary injunction relief "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." **18 U.S.C. §3626(a)(2).** *See also Westefer*, **682 F.3d at 683 ("[T]he PLRA enforces a point repeatedly made by the Supreme Court in cases challenging prison conditions: prison officials have broad administrative and discretionary authority over the institutions they manage.")(internal quotation marks and citation omitted).** The Seventh Circuit has described injunctions like the one sought here, where an injunction would require an affirmative act by the defendant, as a mandatory preliminary injunction.  *Graham v. Med. Mut. of Ohio*, **130 F.3d 293, 295**

(7th Cir. 1997). Mandatory injunctions are "cautiously viewed and sparingly issued," since they require the court to command a defendant to take a particular action. *Id.* (citing *Jordan v. Wolke*, 593 F.2d 772, 774 (7th Cir. 1978); and *W.A. Mack, Inc. v. Gen. Motors Corp.*, 260 F.2d 886, 890 (7th Cir. 1958)). The evidence that Plaintiff was attacked, denied food and medication, and is under constant threat of harm to his health and safety is, as discussed below, largely unrebutted. The likelihood of his success on the merits weighs heavily on whether an injunction should issue, and that question hinges largely on the Eighth Amendment caselaw that protects prisoners from abuse at the hands of correctional officers.[1]

### 2. *Eighth Amendment Standard*

Unnecessary, wanton infliction of pain on a prisoner violates that prisoner's Eighth Amendment rights. *Lewis v. Downey*, 581 F.3d 467, 475 (7th Cir. 2009). Non-*de minimus* force runs afoul of the Eighth Amendment's proscription against cruel and unusual punishment when it is intended maliciously and sadistically to cause harm. *Id.* at 476 (citing *Hudson v. McMillian*, 503 U.S. 1 (1992)). Serious threats need not manifest themselves into actual harm to be actionable. "[O]ne does not have to await the consummation of threatened injury to obtain preventive relief." *Farmer v. Brennan*, 511 U.S. 825, 845 (1994) (internal citation and quotation marks omitted). Inmates may, in seeking an injunction against a contemporary constitutional violation of a nature likely to continue, rely on developments that postdate the pleadings and pretrial motions. *Id.*

---

[1] Plaintiff's second amended complaint, as limited by the Court's threshold order, contains non-Eighth Amendment claims, as well. Based on the record related to the Eighth Amendment claims, the Court does not need to address the likelihood of success of Plaintiff's other claims at this time.

**at 845-46.**

A<small>NALYSIS</small>

### 1. *Plaintiff's Objections to the Report & Recommendation*

Hoskins objected to the report and recommendation, seeking to correct factual errors. He argues that some of his allegations, including that Defendant Spiller told him that he would not be sent to other institutions for court writs to prevent Hoskins from receiving medical treatment, showers, yard time, and access to the grievance procedures, are not included in the R&R. He also claimed that he never said that he did not want to be housed at Pontiac Correctional Center. Hoskins also argued that, despite the R&R stating otherwise, he has filed documents since the evidentiary hearing complaining about harsh treatment by the defendants that is ongoing. Finally, Hoskins asks that he be permanently transferred from Menard rather than merely during the pendency of this case. The defendants did not respond to Plaintiff's objections.

The findings of fact in the R&R are thorough and descriptive. Though not every fact alleged in this case is recounted, the description of Plaintiff's testimony and the evidence is an accurate, detailed recitation. Despite arguing otherwise in his objections, Hoskins did say that he does not want to be housed at Pontiac. (Doc. 52, p.1), and the R&R reflects that the threats to Hoskins are ongoing. Additionally, though Hoskins may prefer a permanent transfer, it would be premature to grant permanent relief before a full decision on the merits of this case is reached. An order that he be transferred during

10

the pendency of the rest of the case is the appropriate at this stage. Accordingly, the Court **REJECTS** Plaintiff's objections to the R&R but notes that, as this review is *de novo*, the Court does take in account factual allegations that are not included in the R&R.

 2. *Defendant's Response to the Report & Recommendation*

 The defendants filed a response to the R&R arguing that that Magistrate Judge Williams abused his discretion by denying Defendant's motion to supplement the record. Defendants take issue with the finding that Plaintiff's testimony was credible during the motion hearing. Defendants also argued that Magistrate Judge Williams erred in applying the standard of law. Defendants disagree that Plaintiff has demonstrated his likelihood of success on the merits or that Plaintiff is likely to suffer harm if he remains at Menard. According to the defendants, the R&R does not address the remaining factors that are weighed when determining whether to grant a preliminary injunction, and, as a result, the undersigned should not grant the motions for a preliminary injunction. Plaintiff did not respond to the defendants' objections.

 Magistrate Judge Williams did not abuse his discretion by denying the Defendants' motion to supplement the record. On July 28, 2016, this case was referred to Magistrate Judge Williams after clearing threshold review. By an order dated August 18, 2016, the plaintiff's several motions for a preliminary injunction were set for hearing on September 16, 2016. On August 23, 2016, executed waivers of service were docketed for several defendants. On September 13, 2016, Assistant Attorney General Christopher Westenberger entered his appearance as counsel for the defendants. The motion hearing was reset to September 23, 2016. Due to a scheduling conflict, the hearing was

postponed until September 26, 2016.

At no time did the defendants file a motion to continue the hearing or suggest that they needed additional time to prepare. Plaintiff was present at the hearing and presented testimony in support of his motions. Counsel for the defendants appeared at the hearing without evidence and without witnesses prepared to testify. At the conclusion of Plaintiff's testimony, defense counsel asked to be allowed to supplement the record later with affidavits and other records to rebut Plaintiff's testimony. Magistrate Judge Williams told defense counsel that he would give him "five days to make a case for being allowed to supplement the record." (Doc. 66, p. 32).

On October 3, 2016, defense counsel filed a motion for leave to supplement the record that was three paragraphs with each paragraph consisting of one sentence. The motion did not provide authority to support granting leave, nor did it provide any indication as to what evidence would be provided to supplement the record. The motion was denied. Magistrate Judge Williams' decision was not clearly erroneous or contrary to law. Having made an independent review of the record, the Court finds that the denial of the motion to supplement the record was an exercise, but not an abuse, of discretion.

Defendants' next argument is that Magistrate Judge Williams erred in finding Plaintiff's testimony credible. Specifically, Judge Williams found that Plaintiff's testimony was consistent with his prior filings, that Plaintiff did not attempt to exaggerate while testifying, and that he made concessions that undermined his position. In response, Defendants attach exhibits to their objections that they suggest undermine

12

the credibility of the plaintiff. Defendants' exhibits, however, mainly address ancillary claims or, in some cases, could support Plaintiff's claims just as easily as they might rebut his allegations. Plaintiff testified that Defendant Engelage falsified his medical records to show that he refused his medication. There are medical records with Defendant Engelage's signature that show that Plaintiff refused his medicine. While the Court could find, as Defendants suggest, that this shows Plaintiff is refusing his medication, the Court could also find that this supports Plaintiff's claim that his records are being falsified by Defendant Engelage. Defendants also attach commissary records and docket sheets from Plaintiff's other civil cases to show that Plaintiff did have access to soap, pens, paper, and the mail. Finally, Defendants attach Plaintiff's disciplinary records as evidence that he is not credible because he has had disciplinary issues in three different correctional institutions. None of the provided records negate the heart of Plaintiff's claims that he is being harmed physically and is facing ongoing threats of harm. Judge Williams, who was able to observe and question Plaintiff, determined that Plaintiff's testimony was credible regarding the ongoing threats to his safety and as to his claims that he is not receiving food, medical treatment, and showers. There is not sufficient justification to set aside the credibility finding.

The heart of Defendants' response focuses on their claim that the R&R does not properly apply the preliminary injunction standard. As this review is *de novo*, the Court conducts an "independent review of the evidence and arguments without giving any presumptive weight to the magistrate judge's conclusion," and "is free, and encouraged, to consider all of the available information about the case when making

this independent decision." *Mendez v. Republic Bank*, **725 F.3d 651, 661 (7th Cir. 2013).**
As the defendants charge that some factors were not weighed in the R&R and that the
examination of other factors was insufficient, the Court will review each factor anew in
determining whether to grant preliminary injunctive relief.

   To establish a likelihood of success on the merits, Hoskins must establish that he
has been subjected to unnecessary, wanton infliction of pain. Threats to his safety that
have yet to manifest into actual, physical harm may be sufficient to establish a
constitutional violation. Plaintiff's unrebutted allegations indicate that he has been
subjected to a physical attack that several of the defendants participated in. Those that
did not participate in the attack appear to have known about it and to have done
nothing to help Plaintiff in the aftermath. Plaintiff alleges that some of the defendants
endeavor to deprive him of food and medication and threaten him with future physical
harm or pain. These claims are largely unrebutted. The defendants suggest that Hoskins
had pens and occasionally purchased soap or other items and that shows that he is
unlikely to succeed on the merits, but the record before the Court supports Plaintiff's
Eighth Amendment claims. As a result, the Court finds there is a strong likelihood that
Plaintiff will succeed on the merits as to his Eighth Amendment claims.

   Similarly, the undersigned is persuaded that Hoskins is likely to suffer harm if he
remains at Menard. While there, he faces physical threats and is prevented from
receiving needed medications and food trays at times. The actions to which he testified
are egregious, and the apparent involvement of numerous staff members and officials is
deeply troubling.  The record raises serious questions as to whether Plaintiff's safety can

be ensured anywhere at Menard should the Court grant a lesser degree of relief. Without an injunction requiring Plaintiff to be transferred to another correctional institution, there is a strong likelihood that he faces irreparable harm in the form of continued, serious threats to his health, safety, and well-being and the denial of basic necessities. Given the interdependence of the Plaintiff's likelihood of success and a likelihood of irreparable harm absent an injunction (i.e., the higher the likelihood of success, the less net harm must be prevented, *Judge*, 612 F.3d 546), the balance of the equities here tips toward injunctive relief, particularly considering that Plaintiff thus far has introduced largely unrebutted evidence of Eighth Amendment violations.

Defendants describe for the first time in their response to the R&R the difficulties they would have if the injunction is granted. They argue that Plaintiff is currently classified to be held at a maximum security institution. There are three maximum security institutions in Illinois, and, they argue, Menard is the only one where Plaintiff can be housed because he assaulted a guard at Stateville and has gang-related issues at Pontiac. However, according to recent filings by the plaintiff, he has been moved temporarily to Stateville. **(*See* Doc. 102).** If Plaintiff's preliminary injunction is granted, Defendants argue they would have difficulty finding somewhere to house him and say they would have to send him to a lower-security facility. Defendants' issues with classification do not persuade the Court that Plaintiff should remain housed somewhere where he is unsafe.

The Court finds that the burden placed on Defendants by mandating Plaintiff's transfer is not greater than the risk of irreparable harm to Plaintiff. Defendants suggest

15

that Plaintiff might, in some unspecified way, endanger the public, staff, or other inmates if he is transferred, but the risk of harm to Plaintiff outweighs that speculative concern. While the public interest is served by ensuring public safety, the Court must consider that the public has a similarly strong interest in preventing constitutional violations. In this case the public interest is best served by ensuring that corrections officers obey the law. *See Joelner v. Village of Washington Park*, **378 F.3d 613, 620 (7th Cir. 2004).**

The Court does not come to this conclusion lightly, particularly given the PLRA's limits on injunctive relief. Relief less intrusive than mandating his transfer would not be effective in protecting Hoskins. He faces ongoing threats from officials, including Defendant Spiller who seemingly instructs others to refuse care to Plaintiff, to deny him food, to spy on him, and to threaten him. There is no place at Menard where Plaintiff would be protected from Defendants' egregious behavior. In most circumstances a transfer is not the least intrusive means of providing relief to a plaintiff, but, in this case, the Court sees no other option to adequately protect Plaintiff from ongoing, serious constitutional violations.

Given the severity of the threats to Plaintiff's safety and the potential complexity of this Court having oversight over Menard's staffing as it relates to Plaintiff, a transfer from Menard is the least intrusive means of protecting Plaintiff from the risk of irreparable harm. Plaintiff's allegations paint a disturbing picture of his life at Menard that entitle him to the relief he seeks. The Court is not convinced by the arguments made by Defendants regarding an injunction's harm to them and the threat to the

16

public interest. The Court, having considered the record and the arguments and objections of the parties, **REJECTS** the Defendants' objections to the R&R.

C<small>ONCLUSION</small>

For the reasons articulated above, the Court **GRANTS** Plaintiff's motions for a preliminary injunction. As soon as practicable, but no later than March 24, 2017, Director John Baldwin is **ORDERED** to **TRANSFER** Plaintiff Joshua Hoskins away from Menard Correctional Center to another facility. Baldwin **SHALL** file a written notice of compliance upon Plaintiff's transfer. Plaintiff shall not be transferred back to Menard during the pendency of this case. At the end of this case, this injunction will either: (1) become a permanent injunction, should Plaintiff prevail at trial and show continued, serious threat to his safety; or (2) expire, should Plaintiff lose on the merits or fail to show a continuing risk of harm.

      **IT IS SO ORDERED**.
      DATED: March 10, 2017

                                  *s/ Michael J. Reagan*
                                  MICHAEL J. REAGAN
                                  **Chief Judge**
                                  **United States District Court**